CITY OF CHICAGO

v.

PATRICK DIGNAN.

</div>

1. PLEADING—ALLEGATIONS AND PROOFS.—If a pleader, though needlessly, describe the tort and the means by which it was effected with minuteness and particularity, and the proof substantially varies from such statement, the plaintiff must fail in his action. As the allegations in this case substantially vary from the proofs, the case must be reversed.

2. INSTRUCTIONS—NOTICE.—Where the declaration averred that a city had notice of a defect in the highway but the instruction given failed to submit the question of notice to the jury. *Held*, that the instruction was improper, as notice was not only averred but was indispensable to liability on the part of the city, for the negligence or non-feasance charged.

3. MUNICIPAL CORPORATION—NOTICE OF DEFECT IN HIGHWAY.—There is no rule of law prescribing for what length of time the continuance of a defect in a highway shall constitute notice to a municipal corporation of its existence. Whether notice could be inferred from the existence of the defect is to be determined by the jury.

4. PREPONDERANCE OF EVIDENCE, INSTRUCTION UPON.—The second instruction directing the jury how to determine the preponderance of evidence was erroneous in that it excluded from their consideration circumstances which were in evidence and undisputed, and which strongly tended to support defendant's witnesses.

City of Chicago v. Dignan.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed February 12, 1884.

This action was brought by Dignan against the city of Chicago, to recover damages for a personal injury to him, occasioned by the negligence of the city in not keeping Monroe street in good repair. The declaration, containing but one count, sets out by way of inducement that said street was one of the public streets of said city, and that it was the duty of the latter to keep the same in a safe condition, etc., and then describes the tort complained of thus: "That said street, at the point of place aforesaid above described, to wit, at the date aforesaid (June 20, 1880) above described, was and had been for a long time prior thereto, in a bad, unsafe and defective and dangerous condition; that the pavement and filling near, about and around a certain man-hole, located and constructed on said Monroe street, near the corner of Jefferson street and said Monroe street, was allowed and permitted *to wear away* near and about and around said man-hole, so as to expose said man-hole and cause it to protrude, stand elevated and raised above the *level of said pavement* and said street to the extent of from six to eight inches; that the same was knowingly, negligently and dangerously allowed and permitted by said defendant, to be and remain in an unsafe and dangerous condition, so that the public and individuals driving and riding in vehicles, wagons and carts, would by passing, traveling, riding upon, over and along said street, be in great danger of their lives and limbs, all of which the said defendant then and there, to wit, at the city of Chicago, had notice." It is then averred that, "by means whereof and in consequence of *said dangerous and unsafe condition of said defect as aforesaid* afterward, to wit, on the 20th day of June, 1882, at the said Chicago, etc., the said plaintiff, *while in the employment of said defendant* and riding upon a hose cart belonging to one of the fire companies of said defendant, to a fire, under the instructions and orders of said defendant, as was his duty to do, said hose cart while on its way to said fire, to

wit, at, etc., said Monroe street, *near the corner of Jefferson street* aforesaid, came in contact with, and one of its wheels ran against said man-hole, causing said hose cart to be thrown over and said plaintiff to be thrown upon the ground and street, and said hose cart to be thrown over and upon said plaintiff, thereby, at, etc., injuring the plaintiff."

On the trial under the general issue, it appeared in evidence that Jefferson is a north and south street, and Monroe an east and west street, crossing Jefferson; that there was a sewer running lengthwise and near the middle of each of said streets, crossing each other where the streets cross; that, where Monroe street crosses Jefferson, at a point five or six feet west of the center of the latter, there was located what is called a man-hole, and which is within a few feet of the north and west corners of Monroe and Jefferson; that west of said corners, and eighty feet from said last mentioned man-hole, there was, near the center of Monroe street, another man-hole to the sewer, this latter being more than double the distance from said corner than was the first mentioned man-hole. It appears in evidence that the engine house of the fire department of the city was located on the west side of Jefferson street, nearly three blocks south of the intersection of Monroe with Jefferson street; that just after 9 o'clock of the morning of June 20, 1880, in response to an alarm of fire, the hose cart in question came out of the said engine house, and the driver being absent, it was driven by the captain of the engine, Smith; that plaintiff sat on a seat behind him; that there were also two other men on, but standing up; that the cart took a course north on Jefferson street, a little east of the center of the street; that a truck of the hook and ladder company also came out, taking its course also north on Jefferson, on the space west of that taken by the hose cart, and kept close up with the cart, and apparently striving to get ahead of it; that arriving at Monroe street, the hose cart was suddenly turned from Jefferson street, westward on Monroe; that it had hardly completed the turn, when it was capsized. Capt. Smith went under it and was killed; the plaintiff also went under, and claims that he was injured. The plaintiff testifies that the

City of Chicago v. Dignan.

south or nigh wheel of the cart struck the sewer cap, at the man-hole west of the corner on Monroe, and was thereby upset. In that statement he was corroborated by a saloon keeper of the name of Ginsburg, and in some degree, by a witness of the name of Ryan. The defendant introduced twelve witnesses who saw the accident, most of whom were entirely disinterested, whose testimony showed that the cart was upset by reason of the suddenness of the turn on Monroe, and by the end of the pole of the truck striking the poles of the nigh wheel; that it was turned over several feet east of, and before it reached said man-hole. It appeared by the uncontradicted testimony of a disinterested observer, who examined at the time the marks on the ground, that the cart ran several feet on one wheel, on the occasion of its being turned over.

It appeared by uncontradicted evidence that trimmings on the end of the pole of the truck presented the bruises and marks which would naturally be made by such collision with the wheel of the cart, and that several of the spokes of the nigh wheel of the cart had the appearance of abrasion and being shivered, so much so that new spokes were required to be put in to repair it. There was no evidence tending to show that the man-hole, or sewer cap, nearest to the corner of Jefferson and Monroe had any connection with the cause of the accident. Nor was there any evidence of the *wearing away of the pavement and filling near and about and around* the man-hole on Monroe, eighty feet west of the former, so as to expose said man-hole and cause it to protrude, stand elevated and raised above the level of the said pavement and the said street, to the extent of from six to eight inches. Instead of there being any evidence tending to show that defendant had permitted such *wearing away* of the pavement and filling near, around and about such man-hole, the plaintiff himself testified that the cause of the bad condition there, was that parties had taken out the blocks of the pavement in spots around in that portion of the street to use for fire-wood. No witness testified that the man-hole stood exposed to any such extent as from six to eight inches above the level of the pave-

ment, nor did the evidence tend to prove that it was raised any distance above the *level of the pavement.* There was no evidence tending to show that the city had any actual notice of such condition of the street, or that it was in a bad condition.

The court, on behalf of the plaintiff, gave to the jury the following instructions:

1st. The court instructs the jury that it is the duty of the city to keep its streets in good repair and free from obstructions, so as to be reasonably safe for the ordinary purposes for which they are used; and if you believe from the evidence that on the 20th of June, 1880, the plaintiff was a member of the fire department of the said city, and, as such, was on that day going to assist in the extinguishment of a fire in said city, and was riding upon a hose cart in the discharge of his duty as such fireman, and in company with, and obeying the orders of his superior officer in said fire department, Captain Smith, and that in going to said fire, said hose cart was being driven along and upon one of the public streets of said city, and came in contact with a sewer cap in or about the middle of said street, and that said sewer cap protruded six or eight inches above the level of the street, and that by reason thereof said hose cart was capsized and the plaintiff thereby injured, and if you further believe from the evidence that said street and sewer cap made it unsafe to travel over and along said street, and had been in that condition for several weeks or months next prior to said day, and if you further believe from the evidence that the plaintiff was, and that Captain Smith, the driver of the cart, was, at the time of the accident, exercising reasonable and ordinary care, then the city is liable in this case, and your verdict should be for the plaintiff. *Given.*

2d. The court instructs the jury that the preponderance of the evidence is not alone determined by the number of witnesses testifying to any fact or facts, but in determining the preponderance of the evidence you should take into consideration the opportunities of the witnesses for seeing, knowing or remembering what they testify to, the probability or im-

probability of its truth, the relation or connection, if auy, between the witnesses and the parties, their interest or lack of interest in the result of the case, and their conduct and demeanor while testifying. *Given.*

The jury found the defendant guilty, and assessed the plaintiff's damages at $500, and the court, overruling the defendant's motion for a new trial, gave judgment on the verdict, from which this appeal is prosecuted.

Mr. JULIUS S. GRINNELL, for appellant; that the principal is not liable to one servant for the carelessness of another servant, where both are engaged in his business, cited Honner v. I. C. R. R. Co., 15 Ill. 550; Joliet v. Seward, 86 Ill. 406; C. & N. W. Ry. Co. v. Scheuring, 4 Bradwell, 533.

The members of the fire department are not the servants of the city, for whose conduct it is liable: Dillon on Municipal Corporations, 3d ed. § 964; Wilcox v. City, 107 Ill. 334.

The proof is not sufficient to cover the allegations of the declaration: Chitty on Pl., 407, 14th Am. ed.; City of Bloomington v. Goodrich, 88 Ill. 558; Gavin v. City of Chicago, 97 Ill. 66; C. & N. W. Ry. Co. v. Scheuring, 4 Bradwell, 541; W., St. L. & P. Ry. Co. v. Fenton, 12 Bradwell, 419.

As to instructions: Harris v. Hale, 71 Ill. 554; Logg v. The People, 92 Ill. 602; Evans v. George, 80 Ill. 52; C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; Martin v. Johnson, 89 Ill. 538; Thorp v. Goewey, 85 Ill. 614; Penn. Co. v. Stoelke, 104 Ill. 201; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; Ill. Linen Co. v. Hough, 91 Ill. 64; Fairbury v. Rogers, 98 Ill. 557.

Mr. EDWIN S. METCALF, for appellee; that it is not competent for an appellate court, sitting for the correction of errors, to disturb the verdict of a jury upon a trial of a case at law, upon the *weight* of the evidence, cited Lewis v. Lewis, 92 Ill. 237; Bishop v. Busse, 69 Ill. 403; Coke's Littleton, 155; Foster on Crim. Law. 255; Greenleaf on Ev., § 49; Chandler v. Von Roedel, 24 How. (U. S.) 227; Witkowsky v. Wasson, 71 N. C. 451; Lombard v. Oliver, 5 Allen, 1; King v. Moore, 42 Mo. 551; Lewis v. Pratt, 48 Vt. 358; Stickle v. Otto, 86 Ill.

161; Connelly v. The People, 81 Ill. 379; Simons v. Waldron, 70 Ill. 281.

A master can not escape responsibility for an injury to his servant caused by the master's negligence: Fairbank v. Haentzsche, 73 Ill. 236; Snow v. H. R. R. Co., 8 Allen, 441; Buzzell v. Laconia Mfg. Co., 48 Me. 113; Chamberlain v. M. & M. R. R. Co., 11 Wis. 238; R. R. Co. v. Stevens, 20 Ohio, 415; R. R. Co. v. McElwee, 67 Penn. 311.

If any particular theory or phase of instructions are desired, they should be asked for: Rozer v. Burns, 13 Geo. 34; Hatch v. Spearin, 11 Me. 354; Hall v. Weir, 1 Allen, 261; Burns v. Sutherland, 7 Penn. 103; Taft v. Wildman, 15 Ohio, 123; Farquhar v. Dallis, 20 Texas, 200; Chamberlain v. Porter, 9 Minn. 960; Zabrisky v. Smith, 13 N. Y. 322; Cato v. State, 9 Fla. 163; Moore v. Ross, 11 N. H. 547; Castle v. Bullard, 23 How. (U. S.) 172; Tomlinson v. Wallace, 16 Wis. 224; Express Co. v. Kountze, 8 Wall. 342.

And, if not requested, it will not be ground of error that the instructions are too general or ambiguous: Bast v. Alford, 20 Texas, 226; State v. Phinney, 42 Me. 384; Heirs, etc., v. Young, 12 Penn. 15; Street v. Lynch, 38 Geo. 631; Pennock v. Dialogue, 2 Peters, 1; Koehler v. Wilson, 40 Iowa, 183; Goodrich v. Eastern R. R. Co., 38 N. H. 390.

Misdirection itself is no ground for a new trial unless the jury were misled: City v. Hesing, 83 Ill. 204; Smith v. Carr, 16 Conn. 450; Hoitt v. Halcomb, 32 N. H. 186; Ochiltree v. Carl, 23 Iowa, 394; Cummings v. Chandler, 26 Me. 453; Mercer Academy v. Ruck, 8 W. Va. 373; Philadelphia, etc., R. R. Co. v. Larkin, 47 Md. 156; Burton v. Merrick, 21 Ark. 357; Adams v. Inhabitants, etc., 11 Allen, 203; Maynell v. Inhabitants, etc., 67 Me. 313.

McALLISTER, P. J. We have examined the unnecessarily voluminous record in this case with patience, care and very great labor, for such a case, and are fully convinced that the judgment below ought to be reversed for reasons which we will endeavor to state with statutory brevity: First. It is a rule universally applicable in this class of cases, as well as others, that the allegations of the declaration and the proofs

City of Chicago v. Dignan.

must correspond.  T., W. & W. R. R. Co. v. Foss, 88 Ill. 551; Gavin v. The City of Chicago, 97 Ill. 66; and in harmony with the above is a further rule, that if the pleader, though needlessly, describe the tort and the means by which it was effected, with minuteness and particularity, and the proof substantially vary from such statement, the plaintiff must fail in his action.  City of Bloomington v. Goodrich, 88 Ill. 558; Fitzsimmons v. Inglis, 5 Taunt. 534.

Now, independently of the question of fact disputed on the trial, whether the plaintiff was thrown from the hose cart by reason of one of its wheels striking the man-hole shown to have been situated on Monroe street, a very considerable distance west of the corner of that street and Jefferson, the proof substantially varied from the description of the tort given in the plaintiff's declaration.  That located the man-hole which caused the injury on Monroe street, near the corner of Jefferson street.  There was in fact one located on Monroe street near the corner of Jefferson, while the plaintiff sought wholly to apply his proofs to one eighty feet west of it.  But what is still worse, the proofs substantially varied from the description of the tort in respect to that man-hole.  The allegation was that the city permitted the pavement and filling to wear away, near, about and around it.  The proof was that blocks had been taken out by trespassers, to be used as fire-wood, in spots about that locality.  The allegation was that the man-hole, by reason of such wearing away, protruded and stood up from six to eight inches above the level of the pavement. That the proof entirely failed to show.  Then, aside from such failure of proof, we are of opinion that the evidence was overwhelmingly against the theory that the plaintiff was thrown from the hose cart by reason of one of its wheels striking that or any other sewer cap.

Secondly.  We are of opinion that both the first and second instructions given on behalf of the plaintiff were erroneous.  By the first, the jury were directed that if said hose cart was being driven along and upon one of the public streets of said city, and came in contact with a sewer cap in or about the middle of said street, and that said sewer cap

protruded six or eight inches above the level of the street, and that by reason thereof said hose cart was capsized and the plaintiff thereby injured, and if the jury further believe from the evidence that said sewer cap made it unsafe to travel over and along said street, and had been in that condition for several weeks or months prior to said day, and that the plaintiff and Captain Smith, the driver of the cart, were, at the time, exercising ordinary care, then the city was liable. The allegation of the declaration was that the man-hole protruded from six to eight inches above the level of the pavement and street. There was no proof that it protruded at all above the level of the pavement. The defect shown was merely that some of the blocks of the pavement had been taken out by trespassers. Such taking of a few blocks out of the pavement could not cause the man-hole or sewer cap to protrude or be raised up from six to eight inches above the level of the pavement. So that proposition was improperly submitted to the jury. The declaration avers that the city had notice of the situation of this man-hole as described; but the instruction not only fails to submit the question of notice to the jury, but assumes to declare as matter of law, that if the sewer cap had so protruded, and thereby made the street unsafe for a period of several weeks previously, the city would be liable.

Notice was not only averred but it was indispensable to liability on the part of the city, for the negligence or non-feasance charged. Mayor v. Sheffield, 4 Wallace, 169; City of Chicago v. Major, 18 Ill. 360.

"There is no rule of law prescribing for what length of time the continuance of a defect in a highway shall constitute notice of its existence. Whether notice could be inferred from the existence of the defect is to be determined by the jury. 2 Thompson on Neg., p. 1238, and cases in note 13.

The second instruction was erroneous, because in directing the jury how to determine the preponderance of evidence, it excluded from their consideration circumstances which were in evidence and undisputed, such as the marks and injury to the spokes of the nigh wheel of the cart, and upon the end of the pole of the truck, which was close upon the

hose cart when it suddenly turned from Jefferson on Monroe street. Those marks strongly tended to support the witnesses for the defendant, who testified that it was the collision of the pole of the hook and ladder truck with the wheel of the cart which caused the latter to upset, and not the manhole.

The judgment of the court below will be reversed and the cause remanded.

<div align="right">Judgment reversed.</div>